# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TIMOTHY FLORES,                                   Case No. 1:10-cv-540
      Plaintiff                              Spiegel, J.
                                               Litkovitz, M.J.

     vs


COMMISSIONER OF                                   **REPORT AND**
SOCIAL SECURITY,                                  **RECOMMENDATION**
      Defendant


Plaintiff Timothy Flores brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for supplemental security income (SSI). This matter is before the Court on

plaintiff's Statement of Errors (Doc. 12) and the Commissioner's memorandum in opposition.

(Doc. 13).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1984. He completed the sixth grade and has no past relevant work

experience. Plaintiff filed an SSI application on August 30, 2007, alleging a disability onset date

of October 20, 1994, due to blindness in the right eye; vision problems with the left eye; bipolar

disorder; and ADHD.[1] (Tr. 123, 137). Plaintiff's application was denied initially and upon

reconsideration. Plaintiff then requested and was granted a de novo hearing before an ALJ. On

October 22, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing

---

[1]Plaintiff filed a previous application for SSI on January 26, 2005, which was denied. (Tr. 64-80). The Administrative Law Judge (ALJ) in the present case determined that the application in issue involves new and material evidence regarding plaintiff's mental impairments and his alcohol abuse so that he was not bound by the prior residual functional capacity (RFC) determination. (Tr. 9-10). *See Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), adopted as Acquiescence Ruling 98-4(6).

before ALJ Donald A. Becher. (Tr. 23-60). A vocational expert (VE), William Cody, also appeared and testified at the hearing. (Tr. 50-59).

On November 23, 2009, the ALJ issued a decision denying plaintiff's SSI application. (Tr. 6-18). The ALJ determined that plaintiff suffers from the severe impairments of blindness in the right eye; bipolar type I disorder with psychotic features; alcohol dependence; and borderline intellectual functioning. (Tr. 12). The ALJ determined that such impairments do not alone or in combination meet or equal the requirements of any section of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). (Tr. 12-13). According to the ALJ, plaintiff retains the RFC to perform a full range of work at all exertional levels but he has the following nonexertional limitations: His vision problems restrict him from performing work that involves driving and working around hazardous machinery and heights; he can recall and complete simple directions; he should avoid detailed instructions; he can concentrate and persist on routine tasks of limited duration; he should avoid work that requires prolonged periods of attention to complete; he can relate to others in public and private on a superficial basis only; he would work best in a smaller group setting with limited conventional interactions with others; he cannot perform customer problem-solving; and he can adapt to changes in the environment when introduced gradually. (Tr. 13). Based on the VE's testimony, and using Grid Rule 204.00 as a framework for decision-making, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff could perform given his age, education, work experience, and RFC. (Tr. 17-18). Accordingly, the ALJ concluded that plaintiff is not disabled under the Social Security Act and is therefore not entitled to SSI. (Tr. 18).

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

To qualify for SSI, plaintiff must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes him from performing the work he previously performed or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 416.920. First, the Commissioner determines whether

the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing, 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff's impairment need not precisely meet the criteria of the Listing in order for plaintiff to obtain benefits. It is sufficient if the impairment is medically equivalent to one in the Listing. 20 C.F.R. § 416.920(d). If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. *Id.* Fourth, if the individual's impairments do not meet or equal any in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1053 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 529 (6th Cir. 1981).

Plaintiff has the burden of proof at the first four steps of the sequential evaluation process. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004). Once

plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *Wilson*, 378 F.3d at 548. *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *Wilson*, 378 F.3d at 548.

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(1)(A); § 1382c(a)(3)(A). The sequential evaluation analyses outlined in 20 C.F.R. § 416.920 and § 416.924 apply to the evaluation of mental impairments. However, the regulations provide a special procedure for evaluating the severity of a mental impairment at steps two and three. 20 C.F.R. § 416.920a. At step two, the ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." *Rabbers v. Commissioner Social Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1520a(b)(1)). If so, the ALJ "must then rate the degree of functional limitation resulting from the impairment." *Id*. (citing 20 C.F.R. § 404.1520a(c)(3)).

5

The claimant's level of functional limitation is rated in four functional areas, commonly known as the "B criteria":  1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation.  *Id.* (citing 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00 et seq.; *Craft v. Astrue,* 539 F.3d 668, 674 (7th Cir. 2008)).  The degree of limitation in the first three functional areas is rated using the following five-point scale:  None, mild, moderate, marked, and extreme.  *Id.* (citing 20 C.F.R. § 404.1520a(c)(4)).  The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale:  None, one or two, three, four or more.  *Id.*  If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled.  *Id.* (citing § 404.1520a(d)(1)).  Otherwise, the impairment is considered severe and the ALJ will proceed to step three.  *Id.* (citing § 404.1520a(d)(2)).

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder."  *Id.*  A claimant whose impairment meets the requirements of the Listing will be deemed conclusively disabled.  *Id.*  If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's RFC before completing steps four and five of the sequential evaluation process.  *Id.* (citing 20 C.F.R. § 404.1520a(d)(3)).

## MEDICAL RECORDS

On November 10, 2007, plaintiff was evaluated by consultative examining psychologist Nancy Schmidtgoessling, Ph.D.  (Tr. 209-215).  Dr. Schmidtgoessling clinically interviewed and

tested plaintiff.  Plaintiff complained to Dr. Schmidtgoessling of visual difficulties and problems

with maintaining concentration and attention and with anger control.  Plaintiff reported that he

went to the seventh grade in school and was held back in the seventh grade five times.  He stated

that he had been placed in behavior school for threatening to kill a teacher in North Carolina, and

he had been repeatedly suspended and expelled from school.  He reported that he had involvement

with juvenile court; he had adult criminal charges; and he was currently on probation.  He

reported that he has periods of getting angry frequently to the point of blacking out, he sometimes

cries for no reason, and he has panic attacks around others.  He reported having 17 to 18

psychiatric hospitalizations.  He also reported using alcohol daily since age 11 and using illegal

drugs, but he claimed to have recently cut back drastically on his drinking after learning his

mother had cirrhosis of the liver, and he denied current illegal drug use.  Plaintiff stated that he

lives with his girlfriend and he sometimes cooks; he does chores with some difficulty since he

cannot see well; he does yard work; he has contact with his mother and with some of his siblings;

he has one friend with whom he has occasional contact; he does not read for pleasure; and he does

not drive.  Plaintiff described his daily activities as playing video games, playing with his dog, and

watching television.

Dr. Schmidtgoessling reported that plaintiff did not appear to be depressed, manic or

anxious during the session.  He appeared to be of borderline intellect.  His remote memory

seemed good; he was oriented and in good contact with reality; he was able to understand and

follow directions; he had mild concentration problems; he could do simple calculations; and he

was able to abstract.

Dr. Schmidtgoessling administered part of the Weschler Adult Intelligence Scale-III test (WAIS-III) to plaintiff. She reported a verbal IQ score of 78; a performance IQ score of 69; and a full-scale IQ score of 72. (Tr. 213). Dr. Schmidtgoessling opined that the performance subtest scores "may be somewhat of an underestimate" because plaintiff seemed to have trouble seeing some of the items on the performance subtests. (Tr. 213).

In the summary and recommendations portion of her report, Dr. Schmidtgoessling stated that plaintiff had a very traumatic and stressful developmental period; he has a history of severe acting out and, until very recently, substance abuse; he has a history of ADHD; he is anxious around others; and he has problems with anger control. Dr. Schmidtgoessling opined based upon the results of her evaluation that plaintiff is able to understand and remember simple one and two-step job instructions; his ability to carry through on such instructions may be markedly to moderately impaired when he is around others because he gets anxious and angry in such situations; his ability to relate to coworkers and supervisors is markedly impaired; and his ability to tolerate the normal stresses and pressures of a job site is markedly impaired. (*Id.*). Dr. Schmidtgoessling diagnosed alcohol abuse, current status unclear; other substance abuse; panic disorder without agoraphobia; bipolar disorder, NOS; borderline intellectual functioning; self-reported visual problems; and stressors of limited social supports and financial problems. (Tr. 214). She assigned a GAF score of 48.[2] (*Id.*).

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed., text rev. 2000) (DSM-IV). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *Id.*

Dr. Alice Chambly, Psy.D., a state agency consultative psychologist, completed a Mental

RFC Assessment and a Psychiatric Review Technique on December 28, 2007.  (Tr. 222-238).

She opined that plaintiff is moderately limited in the following areas:

- Ability to understand and remember detailed instructions.
- Ability to carry out detailed instructions.
- Ability to work in coordination with or proximity to others without being distracted by them.
- Ability to maintain attention and concentration for extended periods.
- Ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
- Ability to accept instructions and respond appropriately to criticism from supervisors.
- Ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
- Ability to respond appropriately to changes in the work setting.
- Ability to set realistic goals or make plans independently of others.

(Tr. 222-223).

In her summary, Dr. Chambly erroneously reported that plaintiff had a 10th-grade

education.  She rejected the prior ALJ's 2006 decision on the ground that plaintiff was now

admitting to a history of substance abuse, which was not mentioned in the prior decision.  She

also rejected Dr. Schmidtgoessling's findings that plaintiff is markedly impaired in several areas

as based on a one-time examination with information provided solely by the plaintiff, whose

credibility Dr. Chambly questioned in light of alleged inconsistencies in his reports about his

drinking.  Dr. Chambly stated that her assessment was based on objective findings in the file as

well as a third-party function report.  She reported that plaintiff had no significant treatment

documented as an adult.  She concluded that plaintiff can recall and complete simple directions

but detailed ones should be avoided; he can concentrate and persist on routine tasks of a limited

duration; he can relate to others in public and private on a superficial basis; he can adapt to

9

changes in the environment when they are introduced gradually; and he "can handle a set routine where he has some flexibility in scheduling his day and is not exposed to strict time or production demands." (Tr. 225-26).

Dr. Chambly opined in the Psychiatric Review Technique that plaintiff has mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 226-236). Dr. Chambly opined that the evidence does not establish the presence of the "C" criteria. (Tr. 237).

Dr. Catherine Flynn, Psy.D., a state agency reviewing psychologist, affirmed Dr. Chambly's assessment as written on March 28, 2008. (Tr. 249).

Dr. Catherine Staskovich, Psychologist, completed a Mental Functional Capacity Assessment after last examining plaintiff on July 27, 2008. (Tr. 259-60). She opined that plaintiff is moderately or markedly limited in the following areas:

- Moderately limited in the ability to remember locations and work-like procedures.
- Markedly limited in the ability to understand, remember and carry out detailed instructions.
- Markedly limited in the ability to maintain attention and concentration for extended periods.
- Moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.
- Moderately limited in the ability to sustain an ordinary routine without special supervision.
- Markedly limited in the ability to work in coordination with or proximity to others without being distracted by them.
- Markedly limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
- Moderately limited in the ability to interact appropriately with the general public.
- Markedly limited in the ability to accept instructions and respond appropriately to criticism from supervisors.

- Moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes.
- Moderately limited in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.
- Moderately limited in the ability to respond appropriately to changes in the work setting.
- Markedly limited in the ability to set realistic goals or make plans independently of others.

Dr. Staskovich rendered the following diagnoses: Bipolar with psychotic features; ethanol abuse; and a personality disorder (NOS) with antisocial traits.[3]  (Tr. 260).  She opined that plaintiff was not employable for at least a year.  (*Id.*).

Plaintiff was treated at the Butler County Community Health Center (BCCHC) from March to July 2008.  (Tr. 262-69).  When he initially presented for treatment, he complained of racing thoughts and was depressed, manic and angry.  (Tr. 269).  He was diagnosed as bipolar with ethanol abuse.  (*Id.*).  Plaintiff was treated with Seroquel.  Although the medication helped, the records show that plaintiff continued to have issues with anger and outbursts.  (Tr. 262).

Plaintiff received counseling at Forensic and Mental Health Services during 2008 and 2009.  (Tr. 273-377).  At the start of treatment in May 2008, a Licensed Professional Clinical Counselor (LPCC) diagnosed plaintiff with bipolar disorder, and cannabis and alcohol abuse were noted.  (Tr. 282).  The counselor assigned plaintiff a GAF score of 60.[4]  (Tr. 282).  Plaintiff's medications during the course of his treatment included Lithium, Trazadone, Seroquel, Inderol and Zantac.  (Tr. 290-291).  Plaintiff reported in October 2009 that he had stopped drinking five weeks earlier.  (Tr. 296).

---

[3]Dr. Staskovich's notes are handwritten and are not entirely legible.

[4]The DSM-IV classifies individuals with scores of 51-60 as having "moderate" symptoms. *Id.*

Dy Thomas Nye, plaintiff's treating optometrist since October 2002, reported in October 2007 that he had last seen plaintiff in February 2006. (Tr. 206). He reported that plaintiff has amblyopia in the right eye; retinal detachment in the left eye; and exotropia.[5] Plaintiff's best corrected vision was 20/30-1 in the left eye and "CF" (he could count fingers) with the right eye.

Dr. Sean Davitt performed an opthalmological/optometric consultative examination on November 12, 2007. (Tr. 216-221). Plaintiff's best corrected vision was counting fingers on the right and 20/50 on the left, but Dr. Davitt found the exam did not support the left eye finding. (Tr. 216). He reported that plaintiff's cooperation and fixation were "fair" on "the field testing in terms of fixation." (Tr. 217). Visual fields as plotted were abnormal and were consistent with the findings. (Id.). He diagnosed plaintiff with a cornea scar in the right eye, retina scars in the left eye, and astigmatism. (Id.). Dr. Davitt restricted plaintiff from hazardous situations due to his decreased depth perception. (Id.).

Dr. Ashok Kejriwal, M.D., completed a basic medical assessment in September 2007. (Tr. 201-02). Dr. Kejriwal found that plaintiff's vision was markedly limited in the left eye and extremely limited in the right eye. (Tr. 202). He opined that plaintiff was unemployable for a period of 12 or more months. (Id.).

Dr. Allan M. Berger, M.D., a state agency reviewing physician, completed an RFC assessment on January 3, 2008. (Tr. 241-48). Dr. Berger adopted the RFC from the prior ALJ decision dated September 25, 2006. (Tr. 245). The only limitations he imposed were a total restriction against driving, hazardous heights, and heavy machinery. (Id.).

---

[5]"Amblyopia" is dimness of vision without detectable organic lesion of the eye, and "exotropia" is strabismus (deviation of the eye) in which there is permanent deviation of the visual axis of one eye away from that of the other. *Dorland's Illustrated Medical Dictionary*, pp. 55, 475, 1256 (26th ed. 1981).

## THE ALJ HEARING

Plaintiff testified at the ALJ hearing that the highest grade he passed in school was the sixth grade. (Tr. 30). He attempted to pass the seventh grade five times before being expelled from school at age 15 or 16. (Tr. 43, 45). While in school, he was in a special class with five or six students, and he received individual tutoring in math. (Tr. 44). He is able to read and write and add and subtract. (Tr. 30).

Plaintiff last worked at Airborne Express through a temporary agency for two to three weeks. (Tr. 31-32). Plaintiff was escorted from the property by the police for getting into an argument and hitting a coworker who told him he was working too fast. (Tr. 32). Plaintiff has been jailed, primarily for misdemeanors. (Tr. 33-34). Plaintiff testified that he takes Seroquel and Lithium for mood swings; Trazadone to help him sleep; Popranolol for blood pressure; and another medication for anxiety. (Tr. 37). Plaintiff testified that he has vision problems as the result of an eye injury he sustained as a child, which went untreated for several weeks due to his mother's neglect. (Tr. 39). He also testified that when he was five or six years old his stepfather, who physically, verbally and sexually abused him, hit him over the head with a hammer. (*Id.*). Plaintiff testified that he learned to abuse substances from his mother and he started abusing drugs at around age 9 or 10. (Tr. 40). He started abusing alcohol at an early age, but he had been sober and drug-free for about six weeks as of the date of the hearing. (Tr. 41). Plaintiff testified as to several physical altercations he had over the past several months preceding the hearing. (Tr. 45-47). He stated that his altercations have sometimes been preceded by drinking, but not always. (Tr. 49). Plaintiff testified that he still gets into altercations, but he had been secluding himself in his house and had not been in any fights lately. (Tr. 45). Plaintiff testified that he had been

13

staying in his house because he is trying to avoid his friends, who are alcoholics and drug users, so that he can stay sober and out of criminal trouble. (*Id.*).

Plaintiff does not have a drivers license because of his vision problems. (Tr. 47). His daily activities consist of taking care of his dogs, cooking his own food, and doing laundry and dishes. (*Id.*). He does not sweep and mop because he cannot see well enough to do these jobs. (*Id.*). He watches television, plays video games, and listens to music. (Tr. 47-48). He takes sleeping medication, which he believes would interfere with his ability to work because it "knocks [him] out" until some time between noon and 2:00 in the afternoon. (*Id.*).

Plaintiff testified that he has no peripheral vision in his left eye and virtually no vision in his right eye. (Tr. 42). He has to sit very close to the television or hold whatever he is reading close to his face in order to see. (*Id.*).

Plaintiff testified that he has problems dealing with other people. (Tr. 42). He stated that he had approximately 17 to 18 psychiatric hospitalizations as a juvenile, with the longest hospitalization lasting 1½ years. (Tr. 43). He was hospitalized for stealing his mother's medication and overdosing to try to kill himself. (Tr. 45). He received some psychiatric treatment in 2007 and more treatment in 2008 and 2009. (Tr. 41).

The ALJ's hypothetical question to the VE assumed an individual who could perform a full range of exertional work, who is restricted from work that involves driving and working around hazardous machinery and heights, and who is limited to work that involves "no more than a limited but satisfactory ability" to relate to coworkers, supervisors and the public; to maintain attention and concentration; to demonstrate reliability; and to understand, remember, and carry out detailed instructions. (Tr. 52). The VE responded that plaintiff would be able to perform jobs

14

such as material handler, of which there are approximately 1,200 jobs locally and approximately 300,000 jobs in the national economy; packer, of which there are approximately 1,500 jobs locally and approximately 200,000 jobs in the national economy; and kitchen or food service worker, of which there are approximately 1,000 jobs locally and approximately 250,000 jobs in the national economy. (Tr. 52-53). When the ALJ changed the hypothetical to include the mental limitations found by Dr. Chambly, the VE testified that plaintiff would still be able to perform a significant number of jobs. (Tr. 53-54). The VE testified that if additional marked limitations found by Dr. Staskovich and Dr. Schmidtgoessling were taken into account, work activity would be precluded. (Tr. 56-57).

## OPINION

Plaintiff presents two assignments of error in this case. First, plaintiff contends the ALJ's finding that his impairments do not meet or equal Listing 12.05C is not supported by substantial evidence. Second, plaintiff contends that the ALJ's analysis of the psychological opinion evidence is not supported by substantial evidence.

### I. Plaintiff's first assignment of error should be overruled.

Listing 12.05 provides in pertinent part:

Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
other mental impairment imposing an additional and significant work-related
limitation of function; . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

A claimant will meet Listing 12.05C for mental retardation "only '[i]f [the claimant's]
impairment satisfies the diagnostic description in the introductory paragraph and any one of the
four sets of criteria. . . .'" *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (quoting 20 C.F.R.
Pt. 404, Subpt. P, App. 1 § 12.00(A)). Accordingly, to satisfy Listing 12.05C, plaintiff must show
(1) "significantly subaverage general intellectual functioning;" (2) "deficits in adaptive
functioning" which initially manifested during the developmental period (*i.e.*, before age 22); (3) a
valid IQ score between 60 through 70; and (4) a physical or other mental impairment imposing an
additional and significant work-related limitation of function. *Daniels v. Commissioner*, 70 F.
App'x 868, 872 (6th Cir. 2003).

"*Adaptive functioning* refers to how effectively individuals cope with common life
demands and how well they meet the standards of personal independence expected of someone in
their particular age group, sociocultural background, and community setting." DSM-IV, p. 42.
"Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills,
communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692,
698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). Mental retardation
requires concurrent deficits or impairments in present adaptive functioning in at least two of the
following areas: communication, self-care, home living, social/interpersonal skills, use of
community resources, self-direction, functional academic skills, work, leisure, health, and safety.
DSM-IV, p. 49.

Plaintiff claims that he meets Listing 12.05C because (1) he had a valid IQ score of 69 on the WAIS-III administered by Dr. Schmidtgoessling, and (2) he has a physical or other mental impairment that imposes additional and significant work-related limitation of function. Specifically, plaintiff claims (1) his ability to relate to coworkers and supervisors and his ability to tolerate the normal stresses and pressures of a job are markedly impaired (presumably as a result of his bipolar disorder); and (2) his vision is significantly limited as supported by both Dr. Kejriwal's opinion that plaintiff's vision is "markedly limited" in the left eye and "extremely limited" in the right eye, and the state agency reviewing physicians' opinions that plaintiff must avoid hazards. In addition, plaintiff claims the evidence demonstrates his mental impairment had its onset before age 22. Plaintiff states that he unsuccessfully attempted to pass seventh grade for five years; he was in a small classroom with only five or six students and he received individual tutoring in math; and he has never performed substantial gainful activity due to his medical impairments. Plaintiff contends that in determining his impairments do not meet Listing 12.05C, the ALJ engaged in speculation; he made medical determinations outside his area of expertise; and he failed to obtain an opinion from a physician designated by the Secretary as to whether plaintiff's impairments are medically equal to the medical criteria of a listed impairment.[6] (Doc. 12 at 7-11).

The Commissioner argues that the ALJ reasonably determined plaintiff's impairments do not meet or equal any in the Listing. (Doc. 13 at 8-13). The Commissioner contends that the Secretary reasonably found that plaintiff does not have a valid IQ score which satisfies Listing

---

[6]Plaintiff argues that the ALJ failed to comply with SSR 83-19. (Doc. 12 at 10-11). However, as the Commissioner correctly notes, SSR 83-19 has been replaced by SSR 96-6p. (Doc. 13 at 12).

12.05C. The Commissioner further contends the ALJ reasonably determined that plaintiff does not have deficits of adaptive functioning associated with mental retardation which initially manifested during the developmental period. The Commissioner also argues that the ALJ adequately considered his impairments in combination in determining they did not meet or equal a listed impairment, and documents in the record demonstrate that the question of medical equivalence was adequately considered by a psychologist designated by the Commissioner. *See* SSR 96-6p (listing documents the Commissioner may rely upon to obtain an opinion of medical equivalence at the first two levels of administrative review).

Plaintiff's first assignment of error should be overruled. The ALJ's determination that plaintiff did not meet or equal Listing 12.05C is supported by substantial evidence. (Tr. 12-13). The ALJ determined that although plaintiff's performance IQ score of 69 was Listing level severity, plaintiff's other IQ scores were both over 70 and "considering any standard error of measurement, the performance IQ score could be considered as in the same range." (Tr. 13). The ALJ also noted that Dr. Schmidtgoessling indicated plaintiff's vision impairment might have resulted in an underestimate of plaintiff's test scores and that the psychologist "found him to be borderline intellectual functioning, rather than retarded." (Tr. 13).

The Court agrees with plaintiff's contention that the ALJ improperly substituted his own opinion for that of Dr. Schmidtgoessling as to plaintiff's performance IQ score without any medical evidence supporting his conclusion that based on some undefined "standard error of measurement" plaintiff's performance IQ "could" be considered higher than that reported by Dr. Schmidtgoessling. *See Poe v. Commissioner*, 342 F. App'x 149, 157 (6th Cir. 2009) (ALJ may not substitute his opinion for that of physician). Nevertheless, even if the ALJ erred in this regard,

18

his finding that plaintiff did not meet Listing 12.05C for mental retardation is substantially supported because plaintiff has failed to present evidence showing he met the diagnostic criteria for mental retardation, *i.e.,* "significant subaverage general intellectual functioning with deficits in adaptive functioning" prior to age 22 for purposes of the Listing. *Foster*, 279 F.3d at 354. *See also Cooper v. Commissioner,* 271 F. App'x 450, 452 (6th Cir. 2007) ("[I]t is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05").

The record contains no direct evidence that plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime after age 22. In this regard, the ALJ reasonably relied on Dr. Schmidtgoessling's conclusion that plaintiff functions in the borderline range of intellectual functioning rather than the mentally retarded range. (Tr. 13, 214). Dr. Schmidtgoessling took into account plaintiff's educational history, work history and daily functioning in rendering her assessment. (Tr. 209-215). She reported that plaintiff's appearance was clean and neat; his responses were relevant, logical and coherent; he had good eye contact; he was pleasant and cooperative; he was able to understand and follow directions; he had average work pace with good effort and persistence; in conversation, he appeared to be of borderline intelligence; his remote memory was good and he only had mild concentration problems; he could do simple calculations; and he was able to abstract. (Tr. 211-212). Dr. Schmidtgoessling did not find that plaintiff suffered from deficits in adaptive functioning.

No psychologist has diagnosed plaintiff with mental retardation and the only examiner and clinical psychologist who tested him diagnosed him instead with borderline intellectual

19

functioning. In addition, plaintiff performed a number of common activities inconsistent with

mental retardation, including laundry, cooking and household chores; caring for the family pets;

visiting his girlfriend's children and grandchildren with her; and going to the grocery and discount

store with his girlfriend. (Tr. 154-158). *See Cooper*, 217 F. App'x at 452 (holding that diagnoses

of borderline intellectual functioning and common activities inconsistent with mental retardation

provided substantial evidence that plaintiff did not meet diagnostic description). There is

substantial evidence in the record that plaintiff does not meet the diagnostic description for mental

retardation. Accordingly, the ALJ's finding that plaintiff does not have an impairment that

satisfies Listing 12.05C is supported by substantial evidence and should be affirmed.

To the extent plaintiff contends the ALJ erred by failing to "consider" whether his

impairments were equivalent in severity to Listing 12.05C (Doc. 12 at 9), plaintiff bears the

burden of presenting "medical findings equal in severity to *all* the criteria for the one most similar

listed impairment." *Foster*, 279 F.3d at 355 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)

(emphasis in the original)). A finding of equivalence for purposes of Listing 12.05C is rare:

> Although the presence of multiple impairments can on occasion support a finding
> that the impairments are equivalent to a listing, a finding of equivalence under
> Listing 12.05(C) will "'very rarely be required.'" *Riley v. Apfel,* No. 97-1799,
> 1998 WL 553151, at *5 (6th Cir. Aug. 20, 1998) (unpublished table decision)
> (quoting Social Security Programs Operations Manual DI24515.056DIC). Given
> that Foster has failed to present any evidence showing "significantly subaverage
> general intellectual functioning with deficits in adaptive functioning" prior to the
> age of 22, there is also substantial evidence to support the ALJ's conclusion that
> Foster's impairments do not equal the listing for mental retardation.

*Foster*, 279 F.3d at 355.

In the instant case, plaintiff has likewise failed to make the required showing. In any

event, contrary to plaintiff's contention, the ALJ's decision reflects that he did consider whether

plaintiff's impairments were equivalent to the Listing for mental retardation. (Tr. 12-13). Also contrary to plaintiff's assertion (Doc. 12 at 10), the record reflects that a physician designated by the Commissioner appropriately addressed the issue of equivalency in accordance with Social Security Ruling 96-9p. (Tr. 226-49). Accordingly, plaintiff's first assignment of error is without merit and should be overruled.

### II. Plaintiff's second assignment of error should be sustained.

Plaintiff claims that the ALJ's opinion is not sufficiently clear in terms of the weight he decided to assign the various psychologists' opinions of record. Plaintiff argues that the ALJ: did not clearly articulate which portions of Dr. Staskovich's opinion he rejected and which portions he credited; did not specify which portion of Dr. Schmidtgoessling's opinion he rejected; failed to state why he rejected Dr. Schmidtgoessling's ultimate conclusion of disability; and failed to provide a legitimate reason for assigning the "most weight" to the opinion of the non-examining state agency psychologist, Dr. Chambly. (Doc. 12 at 11-13).

The Commissioner contends that the ALJ reasonably determined the weight to give the opinions of the various psychologists. The Commissioner argues the ALJ reasonably determined that Dr. Staskovich's opinion was not supported by her own findings because the extent of her evaluation was unclear, and the ALJ could reasonably discount her opinion because it contained no substantiating medical data or other evidence. The Commissioner also argues that the ALJ appropriately gave Dr. Schmidtgoessling's opinion more weight because it was supported by her own clinical and diagnostic findings, and reasonably gave the most weight to Dr. Chambly, who reviewed plaintiff's medical records and made a number of findings based on her review. (Doc. 13 at 15-17).

21

In weighing the various medical opinions of record, an ALJ must consider factors such as the length, nature and extent of the treatment relationship; the frequency of examination; the medical specialty of the physician; how well-supported by evidence the opinions are; and how consistent an opinion is with the record as a whole. 20 C.F.R. § 416.927(d)(2)-(6); *Wilson*, 378 F.3d at 544. When evaluating medical opinions, an ALJ must generally accord greater weight to the opinions of a treating physician than to those of a physician who examined a claimant only once. *Walters v. Commissioner*, 127 F.3d 525, 530-31 (6th Cir. 1997). The opinion of a non-treating but examining source is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1); *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007)). The weight to be accorded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 416.927(d)(3).

Here, the ALJ properly found there was no opinion from a treating source. The only records from Dr. Staskovich are a Mental Functional Capacity Assessment and her handwritten observations in support of her findings. (Tr. 259-260). The ALJ reasonably accorded Dr. Staskovich's opinion only "some weight" because the extent of her evaluation is unclear from the record. (Tr. 16). The ALJ stated that Dr. Schmidtgoessling saw plaintiff twice and "articulated the rationale for her conclusions." (Tr. 16). The ALJ therefore determined that Dr. Schmidtgoessling's opinion was entitled to "more weight" than that of Dr. Staskovich. (Tr. 16).

The ALJ's decision to accord Dr. Staskovich's findings less weight than those of Dr. Schmidtgoessling is substantially supported by the record.

Nevertheless, the ALJ failed to set forth specific and valid reasons for giving the most weight to the opinion of Dr. Chambly, the non-examining state agency psychologist, over that of Dr. Schmidtgoessling, the examining consultative psychologist. The ALJ determined that Dr. Chambly, who never examined plaintiff and who the ALJ acknowledged did not have all of the records before her, was entitled to the "most weight" of the psychologists because she had the "greatest overview" of all the psychologists offering an opinion. (Tr. 17). Yet, the ALJ's decision fails to explain how Dr. Chambly could have the "greatest overview" of all of the psychologists offering an opinion when she did not have all of the records before her and never examined plaintiff. (Tr. 17). The ALJ's failure to articulate his rationale for giving the most weight to Dr. Chambly was in error and contravenes the Social Security regulations. Section 416.927(f)(2)(ii) provides in relevant part:

> Unless the treating source's opinions is given controlling weight, the administrative law judge *must explain* in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, *as the administrative law judge must do for any opinions* from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(f)(2)(ii) (emphasis added). *See also* Social Security Ruling 96-6p, 1996 WL 374180, at *1 (July 2, 1996) (ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions").

In the instant case, the opinion of Dr. Schmidtgoessling, an examining source, should have been accorded greater weight than that of Dr. Chambly, a non-examining source, absent some valid reason to discount Dr. Schmidtgoessling's opinion. *See* 20 C.F.R. § 416.927(d)(1). The

ALJ failed to articulate any such reason. To the contrary, the ALJ seemingly credited Dr. Schmidtgoessling's opinion, stating that Dr. Schmidtgoessling examined plaintiff on two occasions and articulated the rationale for her opinion. (Tr. 16). There is no indication from the ALJ's decision that Dr. Schmidtgoessling's rationale for her opinion on plaintiff's limitations was somehow unsupported.

In this case, the absence of a clear explanation by the ALJ of the factors he considered in crediting Dr. Chambly's opinion over Dr. Schmidtgoessling's opinion prevents the Court from conducting any meaningful judicial review of the ALJ's decision. *See May v. Astrue*, No. 3:09-cv-090, 2009 WL 4716033, at *10 (S.D. Ohio Dec. 9, 2009). "Without some reasons why the ALJ credited a state agency medical source, there is no way to determine whether the ALJ actually applied the correct legal criteria, *i.e.,* the regulatory factors listed in § 404.1527(d), or whether the ALJ merely accepted the opinion without evaluating it under the factors required by the Regulations, *see* 404.1527(f)(2)(ii), and Rulings, *see* Soc. Sec. Ruling 96-6p, 1996 WL 374180." *Id.* Thus, the ALJ erred by failing to set forth specific, valid reasons for the weight assigned to the various psychologists' reports of record. This error is not harmless because if Dr. Schmidtgoessling's opinion is credited, the VE testified that work activity would be precluded. (Tr. 56-57). Plaintiff's second assignment of error should be sustained.

## CONCLUSION

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with

or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Id. See also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

The Court notes that all essential factual issues have not been resolved in this matter, and the current record does not adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *See Faucher*, 17 F.3d at 176. Further proceedings pursuant to sentence four of § 405(g) are warranted due to the ALJ's failure to set forth specific reasons for assigning the weight he decided to accord the decisions of Dr. Schmidtgoessling and Dr. Chambly, so as to allow for an adequate review of his determination as required by the Social Security Rules and Regulations and Sixth Circuit law.[7]

---

[7]The Court notes that there is also a question as to whether plaintiff's substance abuse is a contributing factor material to the disability determination. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The ALJ noted the evidence of plaintiff's alcohol abuse and stated, "Were I to determine that the claimant was disabled, I would be forced to conclude that he has not met his burden to show he would not be disabled but for his alcohol abuse." (Tr. 16). Aside from this conclusory statement, the ALJ did not evaluate plaintiff's substance abuse problems in accordance with the Social Security regulations. In determining whether a claimant's alcohol or drug use precludes him from receiving Social Security benefits the ALJ must first determine whether a claimant is disabled and then determine whether alcohol or drug use is a material contributor to the determination of disability, *i.e.*, whether the limitations that would remain in the absence of alcoholism or drug addiction are severe enough to be disabling. *See* 20 C.F.R. § 416.935(a). This process requires an evaluation of the claimant's current physical and mental limitations which would remain if the claimant stopped using drugs or alcohol and then a determination of whether any or all of the remaining limitations would be disabling. *See* 20 C.F.R. § 416.935(b)(2). The ALJ made no attempt to apply this evaluation process, nor did the parties address the effect of plaintiff's substance abuse problems on his

25

**IT IS THEREFORE RECOMMENDED THAT:**

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence

Four of 42 U.S.C. § 405(g).


Date: _9/13/2011_                              _Karen L. Litkovitz_
                                               Karen L. Litkovitz
                                               United States Magistrate Judge

---

functioning.  Therefore, this Court should decline to address this issue in the first instance.

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TIMOTHY FLORES,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-540
Spiegel, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).